**UNITED STATE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| DUSTIN BURNIKEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00050 |
| | ) | |
| MICHAEL FONG, GREG WESSELS and | ) | |
| CITY OF DES MOINES, IOWA | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S STATEMENT OF UNCONTROVERTED MATERIAL FACTS**
**IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Dustin Burnikel ("Burnikel"), and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 of the United States District Court for the Southern District of Iowa, submits his Statement of Uncontroverted Fact in Support of His Motion for Summary Judgment.

**A.      The Parties**

1.      Plaintiff Dustin Burnikel ("Plaintiff" or "Burnikel") is a citizen of the United States of America and of the State of Iowa, who resides in Howard County, Iowa. (App. 269, ¶ 7).

2.      Defendant Michael Fong ("Fong") is a United States citizen and a resident of the State of Iowa. At all times referred to herein, Defendant Fong was an Iowa-certified peace officer, employed by the City of Des Moines, Iowa. All acts of Defendant Michael Fong set forth in the Complaint were done under color of law. Defendant Michael Fong is sued in his individual capacity. (App. 269 ¶ 8; App. 292 ¶ 8).

3.      Defendant Greg Wessels ("Wessels") is a United States citizen and a resident of the State of Iowa. At all times referred to herein, Defendant Wessels was an Iowa-certified peace officer, employed by the City of Des Moines, Iowa. All acts of Defendant Wessels set forth in the

Complaint were done under color of law. Defendant Wessels is sued in his individual capacity. (App. 270 ¶ 9; App. 293 ¶ 9).

4.      Defendant City of Des Moines, Iowa ("City" or "Des Moines") is an Iowa municipal corporation, organized and existing pursuant to Iowa law and is located at 400 East First Street, Des Moines, Polk County, Iowa. Defendant City of Des Moines is responsible for maintaining and operating the Des Moines Police Department. (App. 270 ¶ 10; App. 293 ¶ 10).

5.      At all times referred to herein, the individual Defendants were acting within the scope of their employment or duties as law enforcement officers for the City of Des Moines Police Department. (App. 270 ¶ 12; App. 293 ¶ 12).

**B.**    **February 16, 2013 Arrest and Beating of Burnikel at the Hands of Defendants Fong and Wessels**

6.      On February 15 and 16, 2013, Burnikel was in Des Moines, Iowa for the annual Iowa High School State Wrestling Tournament. (App. 4 at 13:25-14:23).

7.      At the time, Burnikel worked for himself at Dusty's Total Tree Service. (App. 2-3 at 5:23-6:2).

8.      Burnikel attended the wrestling tournament with his father (Don), his 10-year-old son (Trey), sister (Heather), and Heather's husband (Marty). (App. 5 at 15:2-8).

9.      Burnikel and his family were staying at the Embassy Suites in downtown Des Moines, Iowa. (App. 5 at 14:15-23).

10.    After the wrestling tournament ended the evening of February 15, 2013, Burnikel left the hotel for a social gathering with his cousin, Derek, and an acquaintance. (App. 6-7 at 21:18-22:22, 23:23-25).

11.    At approximately 1:30 AM, Burnikel was returning to his hotel from a social outing with his cousin and friend. (App. 8 at 26:16-18).

12.     As Burnikel and his cousin and friend walked toward their hotel, they came upon and stood in line at a cabstand in the 200 block of Third Street in Des Moines, Iowa. (App. 9 at 30:13-31:22).

13.     There, Burnikel witnessed a man in an altercation with a woman, later identified as Breanna Hunemiller. (App. 9 at 31:23-32-3; App. 10 at 41:8-10; App. 24 at 31:24-32:3; App. 31 at 14:3-7).

14.     The woman had been thrown to the ground and was "crying and screaming" with a man, later identified as Defendant Fong, on top of her. (App. 9 at 31:18-32:7; App. 25 at 35:18-36:4).

15.     At the time, Defendants Fong and Wessels were off duty, working security at the cab stand at an assignment received and approved by the Des Moines Police Department.  (App. 41 at 6:4-9).

16.     Upon seeing Defendant Fong engaged with the woman, Burnikel yelled "What are you doing to her? Why are you hurting her?" (App. 9 at 31:23-32:7; 32:14-33:24; App. 10 at 38:13-16; 39:17-23, App. 24 at 31:24-32:22).

17.     Upon hearing the statement, Defendant Fong released the woman and immediately pepper sprayed Burnikel. (App. 10 at 39:8-16; App. 24 at 31:22-23).

18.     The pepper spray instantaneously blinded Burnikel. (App. 10 at 39:8-11).

19.     Defendant Fong then punched Burnikel in Burnikel's nose. (App.  23 at 29:18-20).

20.     Defendant Wessels then pepper sprayed Burnikel. (App. 10 at 39:12-16).

21.     Immediately thereafter, Defendant Wessels joined Defendant Fong in attacking Burnikel. (App. 23 at 29:18-20; App. 26 at 43:1-3; App. 28 at 51:1-5; App. 33 at 29:2-4).

22.     Defendant Fong then delivered two knee strikes to Burnikel's mid-section. (App. 32 at 18:10-14).

23.     Defendant Wessels either simultaneously or very near after punched Burnikel twice in the testicles. (App. 30 at 4:11-21; App. 32 at 20:11-23).

24.     Defendant Wessels delivered the testicles blows with his dominant hand and in quick succession. (App. 35 at 53:13-24).

25.     Defendant Wessels has never been trained to punch a suspect in the testicles. (App. 30 at 4:22-23).

26.     In fact, the Des Moines Police Department considers the testicles a red-zone, that should not be targeted. (App. 49 at 35:13-36:2; App. 53 at 14:16-15:5; App. 57 at 14:5-7).

27.     Defendants Fong and Wessels proceed to punch Burnikel in his stomach and sides. (App. 11 at 43:20-44:4).

28.     After Defendants Fong and Wessels struck Burnikel in his nose, stomach, sides, knees, and testicles (twice), Burnikel fell to the ground. (App. 23-24 at 29:24-30:5).

29.     While Burnikel was on the ground, Defendant Wong then punched Burnikel again in the head and face. (App. 23-24 at 29:24-30:13; App. 32 at 18:10-14).

30.     The Des Moines Police Department considers the head a red-zone, that should not be targeted. (App. 49 at 36:23-25).

31.     Defendants Fong and Wessels continued to strike Burnikel face, ribs, ears, and back of head. (App. 12-13 at 46:14-52:6).

32.     Defendants Fong and Wessels also kicked Burnikel in his lower back. (App. 12 at 49:20-25).

33.     As a result of the beatings, Burnikel's teeth broke through his lips and his eyes were swollen shut. (App. 12 at 46:21-47:3).

34.     During the beating, Burnikel yelled "I didn't do anything. I'm not resisting" and "Stop hitting me." (App. 11 at 44:14-17; 45:13-22).

35.     Defendants Fong and Wessels then handcuffed Burnikel. (App. 13 at 52:11-13).

36.     Defendants Fong and Wessels lifted the handcuffed Burnikel from the ground and immediately dropped him face first onto the concrete. (App. 13 at 52:25-53:6).

37.     During the arrest, Burnikel complained to Defendant Fong about his injuries. (App. 28 at 53:16-19).

38.     As a result of the beating, Burnikel suffered eight cracked teeth and one broken tooth, black eyes, and injuries to his testicles, face, mouth, eyes, hips, thighs, ribs and back. (App. 67-68; App. 69-76; App. 15 at 67:1-4).

39.     At the time he was beaten and pepper sprayed by Defendants Fong and Wessels, Burnikel did not know that the Defendants were Des Moines Police officers. (App. 11 at 45:14-22; App. 18 at 97:13-15).

40.     Burnikel only observed that Defendants Fong and Wessels were dressed in black. (App. 10 at 41:15-23).

41.     Burnikel did not see any police insignias on Defendants Fong or Wessels's clothing. (App. 10 at 41:15-23).

42.     In fact, the officers were wearing dark coats over their uniforms. (App. 25 at 34:9-11).

43.     The coats did not have any police insignias on their backs. (App. 25 at 34:12-14).

44.     Defendants Fong and Wessels never identified themselves as police officers. (App. 25 at 35:1-3).

45.     Before striking and pepper spraying Burnikel, Defendant Fong never told Burnikel he was under arrest. (App. 27 at 48:5-8).

46.     Defendant Wessels does not recall whether he ever told Burnikel that he was under arrest. (App. 34 at 31:7-9)

47.     Defendants Fong and Wessels arrested Burnikel. (App. 271 at ¶ 22; App. 293 at ¶ 22).

48.     At no point during the time that Defendants Fong and Wessels were beating Burnikel did Burnikel fight back. (App. 33 at 28:22-23).

49.     Lieutenant Larry Davey of the Des Moines Police Department responded to the scene to investigate Defendants Fong and Wessels' use of force against Burnikel. (App. 46 at 6:6-17).

50.     During use of force investigation, supervisors are trained to interview any available witnesses. (App. 79 at 14:15-15:5).

51.     Lt. Davey did not interview any witnesses other than Burnikel. (App. 48 at 24:21-25:9).

52.     Breanna Hunemiller, a witness to the incident, was still at the scene when Lt. Davey arrived. (App. 14 at 59:12-60:7).

53.     During use of force investigation, supervisors are trained to include all relevant information in their reports. (App. 49 at 37:12-14).

54.     Lt. Davey did not include the two blows to Burnikel's testicles or of the repeated blows to Burnikel's head in his use of force report. (App. 89).

55.     Despite the fact that Burnikel never fought back, Lt. Davey's report that Burnikel had "interfered with a police officer causing injury.  (App. 89; App. 47 at 18:8-12; App. 36 at 56:10-18).

56.     At the time of his investigation, Lt. Davey had no knowledge of Defendant Fong and Defendant Wessels' past history of sustained finding of excessive force. (App. 50 at 50:17-51:2).

57.     Defendant Fong's use of of force against Burnikel was reviewed by his supervisors, Sgt. House, Lt. Tony Knox, and Major Dana Wingert. (App. 105; App. 43 at 55:8-10).

58.     Sgt. House, Lt. Knox, and Major Wingert endorsed Defendant Fong's use of force. (App. 105).

59.     The use of force investigation contains no details of Defendant Fong's previous suspension for using excessive force. (App. 104-116).

60.     Sgt. House, Lt. Knox, and Major Wingert did not discuss Defendant Fong's previous suspension for using excessive force in their endorsements of the use of force against Burnikel. (App. 105).

61.     Defendant Wessel's use of of force against Burnikel was reviewed by his supervisors Cpt. Stout and Major Dana Wingert. (App. 108; App. 56 at 9:3-4).

62.     Cpt. Stout and Major Dana Wingert endorsed Defendant Wessels; use of force. (App. 108).

63.     At his deposition, Cpt. Stout stated that an officer's past history of excessive use of force would be relevant to his determination. (App. 65 at 64:15-23).

64.     At the time he was deposed in this matter and after he endorsed Defendant Wessels's use of force, Cpt. Stout did not know that Defendant Wessels had been suspended on at least six previous times. (App. 59 at 24:15-23).

65.     At the time he was deposed in this matter and after he endorsed Defendant Wessels's use of force, Cpt. Stout did not know that Defendant Wessels had been reprimanded three times previously for using excessive force. (App. 59 at 24:15-23; App. 65 at 64:24-65:11).

66.     At the time he endorsed Defendant Wessels use of force, Cpt. Stout did not know that Defendant Wessels had punched Burnikel in the testicles. (App. 57 at 14:21-24; App. 64 at 56:23-57:3).

67.     Cpt. Stout is one of the top 12 ranked supervisors with the Des Moines Police Department; there are approximately 340 officers in the Des Moines Police Department. (App. 63 at 48:21-23; 49:2-3).

68.     Defendants Fong and Wessels charged Burnikel with Public Intoxication, Interfering with Official Acts and Resisting Arrest in violation of Iowa law. (App. 271 at ¶ 23; App. 293 at ¶ 23).

69.     Defendant City of Des Moines prosecuted Burnikel in a criminal proceeding in Polk County, Iowa. (App. 271 at ¶ 24; 284 at ¶ 90; App. 293 at ¶ 24; App. 298 at ¶ 90).

70.     A jury acquitted Burnikel of all charges. (App. 271 at 25; App. 293 at ¶¶ 24-25).

71.     As a result of Defendants' actions, Burnikel suffers from chronic back pain, which has limited his ability to work at the same level prior to this event. (App. 117-135).

72.     As a result of Defendants' actions, Burnikel suffered damages in the form of lost income from his tree service business. This loss continues today. (App. 3 at 6:10-12; App. 16-17 at 84:22-85:10; 86:11-21).

73. As a result of Defendants' actions, Burnikel also suffered dental trauma in the form of nine lost or broken teeth from Defendants' punches to his face. (App. 15 at 67:1-4; App. 69-76).

74. Because of his criminal arrest, Burnikel's AAU coaching credentials were suspended and he was prohibited from coaching his Pee Wee wrestling team, a post he held for years. (App. 17 at 86:22-88:9).

**C. History of Inappropriate Behavior by Defendant Wessels**

Wessels Uses Excessive Force Against Handcuffed Suspects in Three Separate Incidents

75. On March 17, 2008, Defendant Wessels used excessive force against a handcuffed suspect. (App. 138).

76. The investigation found that Defendant Wessels "forcibly" took a handcuffed suspect to the ground resulting in injuries to the suspect's face because the handcuffed suspect had "no way to protect himself from the impending impact of the ground." (App. 138).

77. The investigation found that Defendant Wessels's action were "inappropriate." (App. 138).

78. Defendant Wessels received an "oral reprimand" due to his inappropriate use of force. (App. 138).

79. Three months later in June 2008, Defendant Wessels punched a "handcuffed prisoner with an open hand" and then "forcefully (took the subject) to the ground causing a bloody nose and abrasion." (App. 143).

80. The investigation found that, at the time, this was "the second incident within ten months where Officer Wessels has used inappropriate force against a handcuffed prisoner with other officers present." (App. 143).

81.     Defendant Wessels received a one-day suspension for using excessive force by punching a handcuffed subject. (App. 142).

82.     On December 8, 2013, Defendant Wessels struck a detained, handcuffed suspect in the jaw. (App. 152).

83.     The excessive force investigation found that Defendant Wessels's "strike to the face was clearly unnecessary and inappropriate" and "unwarranted." (App. 152).

84.     The suspect's "hands and feet (were) already restrained and three other officers/sergeants (were) controlling him" when Defendant Wessels punched him in the jaw. (App. 154).

85.     Not only did Defendant Wessels illegally strike the handcuffed suspect, but he failed to document the use of force as required by Des Moines Police guidelines. (App. 152, 154).

86.     Four weeks after the incident, Defendant Wessels had still not reported the incident. (App. 154).

87.     Two other Des Moines police officers observed Defendant Wessels illegally strike the handcuffed suspect. (App. 154).

88.     Neither officer documented the illegal strike in their reports. (App. 154).

89.     Defendant Wessels was "surprised to learn the incident had been caught on video." (App. 154).

90.     Defendant Wessels had been reprimanded for another incident that occurred a week before he struck the handcuffed suspect. (App. 153; Statement of Uncontroverted Facts, ¶¶ 111-113).

91. Defendant Wessels had been reprimanded for another incident that occurred two months before he struck the handcuffed suspect. (App. 153, Statement of Uncontroverted Facts, ¶¶ 100-103).

92. The investigation found that "there is a pattern of decision making and behavior that does not conform to the department's standards and expectations. (App. 153).

93. On April 10, 2014, then Chief of Police Judy Bradshaw issued a memorandum sustaining a finding of excessive force by Defendant Wessels. (App. 146).

94. Defendant Wessels received a four-day suspension for striking the handcuffed suspect and failing to report his use of force. (App. 146).

Wessels Suspended For Using Des Moines Police Department Computers to Access Pornography

95. One August 12, 2005, Defendant Wessels was suspended for two days for "violation of work rules." (App. 158).

96. The "conduct violation occurred during the months of April and May 2005." (App. 163).

97. The conduct at question was viewing pornography on Des Moines city computers. (App. 37-38 at 61:20-64:1).

98. Defendant Wessels was also ordered to attend a session with a psychologist. (App. 38 at 63:17-64:1; App. 163).

Wessels Suspended on at Least Three Other Occasions

99. On January 19, 2009, for his "inappropriate conduct towards fellow team members and his supervisor" including "walking out on a team training class, missing several On-Call assignments, and being insubordinate to a supervisor," Defendant Wessels was suspended for three

days, stripped of his STAR Team Response duties, and ordered to attend anger management training. (App. 254-55).

100.    In October 2013, Defendant Wessels attempted to shoot out the tires of a vehicle that was in motion. (App. 182).

101.    The investigation found that Defendant Wessels's actions were "not in compliance with department policy as it pertains to the discharge of firearms," nor "considered an appropriate method of preventing a chase." (App. 182).

102.    The investigation further found that "(d)ischarging a firearm is arguably one of the most dangerous actions an officer can take." (App. 182).

103.    Defendant Wessels received a two-day suspension for his inappropriate use of a firearm. (App. 182).

Wessels Disciplined on at Least Two Other Occasions

104.    On May 24, 2002, Defendant Wessels received a two-day suspension for his actions on March 14 and 15, 2002. (App. 184).

105.    The investigation found that, while on-duty, Defendant Wessels attended a basketball game at the Veteran's Memorial Auditorium. (App. 187).

106.    Defendant Wessels was not assigned to work the basketball game and used his uniform to enter the game without paying the admission fee. (App. 187).

107.    On March 14, 2002, when confronted by a Des Moines Police supervisor about his transgressions, Defendant Wessels "was repeatedly insubordinate in that he did not leave as he was directed to do." (App. 187).

108.     The next day, Defendant Wessels returned to event and once again violated policy by attending the event while on duty, not paying, and refusing to leave when ordered to by two superior officers. (App. 187).

109.     On June 15, 2005, Defendant Wessels received a written reprimand for using profanity toward a suspect. (App. 224).

110.     The suspect also accused Defendant Wessels of grabbing the suspect by throat and choking the suspect. (App. 224).

111.     On December 6, 2013, Defendant Wessels received a written reprimand for failing to initiate an investigation or file police report when he was informed of an assault. (App. 221).

112.     The investigation determined that Defendant Wessels's failure to initiate the investigation prevent the "identity of the possible suspect(s) and true circumstances of the incident" from ever being established. (App. 221).

113.     Defendant Wessels was found to have violated three department policies by failing to initiate an investigation or file police report when he was informed of an assault. (App. 221).

**D.     History of Inappropriate Behavior by Defendant Fong**

114.     On November 8, 2007, Defendant Fong and several officer responded to an incident. (App. 229; App. 22 at 23:7-24:18).

115.     While Defendant Fong was outside, the other officers encountered the suspect inside the building. (App. 22 at 23:7-24:18).

116.     The other officers TASERed, handcuffed, and subdued the suspect. (App. 22 at 23:7-24:18).

117.     Defendant Fong claims that the suspect "shoulder-checked" Defendant Fong while in the house. (App. 22 at 23:7-24:18).

118.    Upon exiting the house with the suspect, Defendant Fong retaliated against the suspect by him in the nose.  (App. 21 at 11:8-22; App. 22 at 23:7-24:18).

119.    When Defendant Fong punched the suspect, the suspect was still handcuffed. (App. 21 at 11:8-22).

120.    The suspect was injured and bloodied as a result of Defendant Fong's use of excessive force. (App. 22 at 24:19-22).

121.    Although a member of senior command recommended that Defendant Fong be fired, the Des Moines Police Department instead suspended Defendant Fong for five days. (App. 22-23 at 25:24-26:10).

122.    The Des Moines Police Chief at the time informed Defendant Fong that one of the reasons he was not terminated was that the Department "had invested a lot of money training" him. (App. 22-23 at 25:24-26:10).

123.    During his deposition, Defendant Fong admitted that punching the handcuffed suspect violate the suspects Constitutional rights. (App. 23 at 26:11-14).

124.    During his deposition, Defendant Fong admitted that punching the handcuffed suspect constituted an Assault under Iowa law. (App. 23 at 26:15-22).

125.    There is no record that Defendant Fong was ever prosecuted for assaulting the suspect or violating the suspect's Constitutional right. (App. 265-267).

**E.    Defendant City of Des Moines Ratifies Officers' Use of Excessive Force by Issuing Positive Annual Reviews**

126.    Defendants have produced a limited subset of annual reviews for Defendant Wessels that cover the following years: 1996-2001, 2004, 2005, 2007-2011, and 2013. (App. 230-264).

127.     The annual reviews are used to evaluate how an officer is performing his or her duties. (App. 80 at 53:23-54:8; App. 61 at 34:10-13).

128.     Each annual review has between 24 and 33 individually rated categories. (App. 230-264).

129.     All but five categories are rates as (1) Not Satisfactory, (2) Some Improvement Needed, (3) Effective – Meets Standards, and (4) Exceeds Standards; the other five categories are rated the same but the Exceeds Standards is not available. (App. 230-264; App. 81 at 54:25-55:4; App. 82 at 58:5-13; App. 58 18:23-20:11).

130.     During the time periods covered by these annual reviews, Defendant Wessels was disciplined one at least 9 separate occasion, resulting in at least 6 suspension totaling at least 14 days. (App. 136-227).

131.     During the time periods covered by these annual reviews, Defendant Wessels received 346 rating in individual categories. (App. 230-264).

132.     Of the 346 rating, 345 (99.71% of all his ratings) were at the "Effect – Meet Standards" or "Exceeds Standards" rating; 260 and 85 ratings respectively. (App. 230-264).

133.     During his deposition, Cpt. Leo stated that an officer who is rated by the Des Moines Police Department virtually all "Effect – Meet Standards" or "Exceeds Standards" ratings would be led to believe by the evaluation that he or she was performing his or her duties up to standards. (App. 61 at 34:19-22).

134.     During his deposition, Cpt. Leo stated that he was surprised to learn that an officer who had received the number and the severity of the suspensions and reprimands that Defendant Wessels had received over his career would have only received one individual rating during his career below "Effect – Meet Standards." (App. 59 at 24:6-14).

135.    The annual review covering 2008 contains Defendant Wessels's only "Some Improvement Needed" rating. (App. 254).

136.    Defendant Wessels received this below standards rating in the "Employee Contacts" category because he was "disciplined for his inappropriate conduct towards fellow team members and his supervisor. That conduct consisted of walking out on a team training class, missing several On-Call assignments, and being insubordinate to a supervisor." (App. 254-255).

137.    Defendant Wessels has never received any negative feedback on his annual reports for his sustained improper actions towards citizens. (App. 230-264).

138.    Defendant Wessels's Annual Review covering 2005 has **8** "Exceeds Standards," **16** Effect – Meet Standards," and **0** "Some Improvement Needed or "Not Satisfactory" ratings. (App. 250).

139.    Defendant Wessels's Annual Review covering 2005 makes no mention of his two-day suspension for a using City computer's to access pornography over a two-month period. (App. 158; App. 37 at 61:20-64:1; App. 250-251).

140.    Even though Defendant Wessels received a written reprimand for directing profanity at a citizen, he received an "Exceeds Standards" rating for his "Public Contacts." (App. 224, 250-251)

141.    Defendant Wessels's Annual Review covering 2008 has **4** "Exceeds Standards," **19** Effect – Meet Standards," **1** "Some Improvement Needed, and **0** "Not Satisfactory" ratings. (App. 254).

142.    Defendant Wessels's Annual Review covering 2008 makes no mention of his one-day suspension for punching a handcuffed suspect or the Oral Reprimand he received for injuring a different handcuffed suspect. (App. 136-143; App. 254-255).

143.    Even though Defendant had been reprimanded twice for excessive force against handcuffed subjects, he received an "Exceeds Standards" rating for his "Suspect Contacts." (App. 136-143; App. 254-255).

144.    Defendant Wessels's Annual Review covering 2013 has **8** "Exceeds Standards," **25** Effect – Meet Standards," **0** "Some Improvement Needed or "Not Satisfactory" ratings. (App. 262).

145.    The only mention Defendant Wessels's Annual Review covering 2013 makes of the three separate disciplinary actions Defendant Wessels received (a four-day suspension for punching handcuffed suspect, a two-day suspension for firing his weapon at a moving vehicle, and a Written Reprimand for failing to investigate or file a written report after being informed of an assault) is a justification for his "Exceeds Standards" rating for "Accepts Responsibility. (App. 262-264).

146.    During this same period that Defendant Wessels failed to investigate or file a written report after being informed of an assault, he received an "Exceeds Standards" rating for "Initiative." (App. 262-264).

147.    Defendant Fong's Annual Review covering 2007 makes no mention of his five-day suspension for punching a handcuffed suspect. (App. 265-267).

148.    Rather, Defendant Fong's Annual Review covering 2007 states that "Fong is a friendly person who is outgoing with the public," "Fong's quality of work is up to standard," and "Fong is a responsible officer and accepts guidance and constructive criticism."  (App. 265-267).

**F.      Defendant City of Des Moines Has No Policies or Procedures to Identify, Investigate, or Retrain Officers Engaged in a Pattern of Excessive Force or misconduct**

149.     The Des Moines Police Department does not have any procedures to share past reprimands, suspensions, or complaints with new supervisors when an officer is transferred to the new supervisor. (App. 83 at 163:8-18; 165:20-166:20; App. 63 at 46:11-16).

150.     The supervisors who are not privy to an officer's reprimands, suspensions, complaints, or past history are responsible for investigating use of force incidents involving officers in their chain of command. (App. 57-58 at 16:2-18:15; App. 63 at 46:11-16).

151.     Upon learning for the first time of Defendant Wessels history of suspensions, reprimands, and use of excessive force, Cpt. Leo stated that he believed "I think it's something we would need to look into." (App. 60 at 31:15-32:9).

152.     During his deposition, Cpt. Leo stated that he was surprised to learn that the only time the Defendant Wessels' evaluation covering 2013 referenced Defendant Wessels's three reprimands and two suspensions in a three-month period was to justify his "Exceeds Standards" rating for "Accepts Responsibility. (App. 60 30:8-31:2).

153.     During his deposition, Cpt. Leo stated that he was surprised to learn that an officer who had received the number and the severity of the suspensions and reprimands that Defendant Wessels had received over his career would have only received one individual rating during his career below "Effect – Meet Standards." (App. 59 at 24:6-14).

154.     When asked "would it surprise you that a single officer who was disciplined for not reporting a use-of-force incident, who was found to have watched porn on a work computer during work hours and had been found to punch a compliant, handcuffed suspect is still working at Des Moines Police Department?," Lt. Davey responded, "I would certainly have questions as to why he was still working here." (App. 50 at 50:17-51:2).

155.    The Des Moines Police Department does not have any policies or procedures in place to identify or investigate officers engaged in a pattern of excessive force or other misconduct. (App. 66 at 68:3-68:17).

156.    There are no Des Moines Police Officers assigned to identify or investigate officers engaged in a pattern of excessive force or other misconduct. (App. 66 at 68:3-68:17).

157.    The Des Moines Police Department does not have any policies or procedures in place requiring additional training or supervision for officers who are found to have used excessive force. (App. 62 at 40:8-11).

158.    The Des Moines Police Department does not have any policies or procedures in place requiring additional training or supervision for officers who have been found on multiple occasions to have used excessive force. (App. 62 40:15-18).

Respectfully submitted,

KHAZAELI WYRSCH STOCK LLC

By: /s/ James R. Wyrsch
James R. Wyrsch
Javad M. Khazaeli
911 Washington Ave, Suite 211
St. Louis, MO. 63101
(314) 288-0777
Fax: (314) 400-7701
james.wyrsch@kwslawfirm.com


Justin K. Swaim
Swaim Law Firm, PLLC
701 13th Street, Suite 2
West Des Moines, IA 50265
(641) 777-5120
Fax: (515) 777-1127
Email: justin@swaimlawfirm.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 6, 2016, he served the foregoing Memorandum to all counsel of record via this court's CM/ECF system at the following addresses:

John O. Haraldson
City of Des Moines Legal Department
400 Robert D. Ray Drive
Des Moines, IA  50309-1891
Email:  JOHaroldson@dmgov.org

/s/ James R. Wyrsch