UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF IOWA
(CENTRAL DIVISION)

| | |
|---|---|
| DUSTIN BURNIKEL,<br><br>       Plaintiff,<br><br>v.<br><br>MICHAEL FONG, individually and in his official capacity as a law enforcement officer with the Des Moines Police department; GREG WESSELS, Individually and in his official capacity As a law enforcement officer with the Des Moines Police Department; and CITY OF DES MOINES, IOWA,<br><br>       Defendants. | Case No. 4:15-cv-00050<br><br>DEFENDANTS' TRIAL BRIEF<br>(First Phase of Trial) |

COME NOW Defendants, and respectfully submit this Trial Brief to discuss the evidence and the claims involved in this matter set for jury trial beginning October 24, 2016.  Defendants file a separate set of proposed Jury Instructions with this Brief.

## TABLE OF CONTENTS

SUMMARY OF THE CASE………........................................................................................  3

    A.    Factual Summary…........................................................................................  3

    B.    Plaintiff's Asserted Damages……………………………………….........  11

ARGUMENT………………………………………………………………………..  12

    I.    PLAINTIFF'S CLAIMS AGAINST OFFICERS FONG AND WESSELS FOR EXCESSIVE FORCE ARE NOT SUPPORTED BY THE EVIDENCE…………………………………………….…………........  12

    A.    Unreasonable Seizure/Excessive Force Claim versus Fong…..………....……  14

    B.    Unreasonable Seizure/Excessive Force Claim versus Wessels……………  18

      C.       Plaintiff's Claim of Injury After Handcuffing…………………………………..  22

II.    PLAINTIFF'S CLAIMS AGAINST OFFICERS FONG AND WESSELS FOR
      BATTERY ARE NOT SUPPORTED BY THE EVIDENCE……………………......  23

III.   PLAINTIFF'S CLAIMS OF FALSE ARREST AGAINST OFFICERS
      FONG AND WESSELS ARE NOT SUPPORTED BY THE EVIDENCE………….  24

IV.   PLAINTIFF'S CLAIMS OF MALICIOUS PROSECUTION AGAINST OFFICERS
      FONG AND WESSELS ARE NOT SUPPORTED BY THE EVIDENCE………….  25

V.    PLAINTIFF'S DAMAGES CLAIMS ARE NOT SUPPORTED
      BY THE EVIDENCE......................................................................................................... 26

CONCLUSION........................................................................................................................ 27

## SUMMARY OF THE CASE

A.   **Factual Summary**

The evidence will show:

On February 16, 2013, the Plaintiff, Dustin Burnikel, was 32 years old.  Mr. Burnikel lived in Cresco, Iowa, which is about a three-and-a-half hour drive from Des Moines, in northeast Iowa. Mr. Burnikel had been in Des Moines during the prior week on a business matter and then stayed for the state wrestling tournament.

Darrick Burnikel, the Plaintiff's cousin, met Dustin Burnikel and his friend Justin Sovereign at the Embassy Suites bar late on the evening of February 15th.  Just after midnight on the morning of February 16th, the three of them then went to El Bait Shop at 200 SW 2nd Street and had some more drinks, remaining there until the bar closed.  Darrick has testified that he, the Plaintiff, and Justin Sovereign probably each had a couple drinks at the Embassy, then three each at El Bait Shop.

The three men then walked toward the "cab stand" at 3rd and Court Avenue about 2:20 a.m. Due to the cold weather, they proceeded first to the doorway at Jokers Lounge in order to warm up and then proceeded to the cab stand, heading north.

At that time, a number of Des Moines area cab companies employed off-duty Des Moines Police Officers to work the cab stand and ensure the public a safe and responsible ride home.  The officers, though off-duty, were in uniform and guided by all the normal rules and regulations of the Des Moines Police Department.

The two officers working the cab stand in the early morning hours of February 16, 2013, were Gregg Wessels and Michael Fong. Typically at the cab stand, one officer stands at the corner of 3rd and Court Avenue, and the other officer goes up and down the line to ensure the crowd is

under control and no one cuts in line.  The line ran north to south.  The cab stand is next to a multi-level parking lot that was then open to the outside.   The sidewalk on 3rd was approximately ten feet wide with a three-foot wide, six-to-eight inch high concrete platform between the sidewalk and the interior of the parking garage.

On this early morning, Officers Fong and Wessels were in standard, Des Moines Police, cold-weather uniforms. Their winter coats have police patches and badges upon them.  Photos of them that early morning, in their uniforms, will be placed into evidence.

A police wagon that is used as a holding location prior to transportation of any arrestee to jail was parked nearby in the parking lot just on the other side of the three-foot wide concrete partition.  The vehicle was facing west and labeled prominently with Des Moines Police stickers and red and blue lights.

The officers will testify they had performed this task several times and state that on a weekend, once the bar closes, a crowd will come to the cab stand.  Anywhere from a few to two hundred people line up waiting to get into cabs. Fights and disruptions are fairly common in the period after the bars close. The reason for the fights is usually intoxication.  People also get upset if they believe someone has cut in line.

The period after the bars close was also near the end of the officers' shift. The officers will testify that on this early morning, the cab stand was probably down to a dozen or so people.  It was cool that evening, as one would expect in mid-February in Des Moines.  The officers will testify that their focus was to get these last few patrons safely in a cab so they could be driven to their residences or hotels. The Defendant officers will further testify that they would rather not arrest anyone if they could help it because they would have to fill out the necessary paperwork and processing, extending their shift and when they could go home themselves.  In typical

circumstances, processing an arrest probably takes an additional 30 to 45 minutes at the end of the night.  If force has to be used, it takes even longer.

The evidence will demonstrate that their recollection is that, at approximately 2:20 a.m., a group of 4 or 5 people came across the street toward the cab stand.  One unknown male with this group cut ahead in the line of those already waiting for a cab.  This individual refused to go to the back of the line when directed to do so by the officers and began continuously arguing with them.

After a period of this behavior, the officers determined they had probable cause to arrest this individual for public intoxication.

Sergeant Wessels then took hold of this person and escorted him toward the holding wagon.  Wessels was crossing the sidewalk and stepping upon the higher concrete platform into the parking garage with the unidentified male.  It was then that a female named Breanna Hunemiller grabbed Sergeant Wessels from behind by the arm.   Sergeant Wessels jerked away from Ms. Hunemiller's grasp and continued with the man toward the back of the transfer wagon.  When Officer Fong saw Hunemiller grab Wessels, he intervened and grabbed Hunemiller by the collar of her coat.   It appeared to both officers that Hunemiller was attempting to prevent Wessels from arresting the unnamed male.

Hunemiller tripped over the concrete platform separating the two spaces as Officer Fong grabbed her collar and her momentum caused her to fall toward the ground.

Because Hunemiller appeared intoxicated and had interfered with the arrest of another individual, Officer Fong believed he had probable cause to arrest her.  Officer Fong was on one knee to the side of Ms. Hunemiller and began the process of handcuffing her.

At this time, Justin Sovereign will testify Dustin Burnikel was walking ahead of him and Darrick Burnikel by 10 to 15 feet.  Sovereign and Darrick Burnikel were in the middle of a

conversation and were not paying attention to what Dustin Burnikel was doing ahead of them.

Breanna Hunemiller, Justin Sovereign, and Darrick Burnikel, though all had been drinking, recognized that Fong and Wessels were police officers.

The Plaintiff, Dustin Burnikel, however, will state that he did not recognize that Fong and Wessels were police officers.  Rather, he believed Fong was simply a man dressed in black, attacking a woman (Hunemiller), and he reacted by intervening.

In May 2013, Burnikel's testimony during his criminal trial on charges of public intoxication and interference was that he was 5 to 6 feet away from Fong and Hunemiller.  In his deposition in early 2016, Mr. Burnikel stated that he was 15 to 20 feet away at the end of the line north of the officers and Hunemiller.  He has testified that he perceived a person in black attacking a woman.

Darrick Burnikel has previously testified that there were people between he and Dustin Burnikel but the latter was standing on the concrete platform separating the sidewalk from the parking garage and he could see Dustin tower above other individuals.   Justin Sovereign will testify that Dustin Burnikel was ahead of him, but that he could see Dustin between himself and the officers.

Officer Fong and Officer Wessels will state that Burnikel came up from behind Officer Fong and he was approximately four or five feet away.  Officer Fong felt Burnikel's presence and turned over his left shoulder and saw him.

Officer Fong observed that Burnikel had moved toward him quickly.  Burnikel appeared angry and intoxicated and was yelling something at Fong.  Burnikel, Fong will state, had his arms up slightly from his side and flexing his hands into fists, appearing to be in a fighter's stance.  As Burnikel was approximately his size, Fong perceived Burnikel as a greater threat to him than Ms.

Hunemiller.

Officer Fong will state that twice he ordered Mr. Burnikel to "get back or you'll be arrested."   Mr. Burnikel did not retreat and remained in an aggressive stance, like someone ready to fight.   Fong will state he was confident at this time and Burnikel intended to fight.

As Officer Wessels was about to handcuff the unknown male at the rear of the van when he looked over his right shoulder and noticed Officer Fong's attention turned towards Mr. Burnikel.   Officer Wessels stated that he could not hear what Burnikel was saying, but he could see that Burnikel had taken an aggressive posture.   Burnikel's fists were doubled-down near his sides like someone who is getting ready to fight.   Officer Wessels estimated Burnikel was approximately four feet away from Officer Fong.

Officer Wessels's came to the assistance of Fong.   This meant that Officer Wessels had to let the unknown male go without being handcuffed.   It was the last time he ever saw that individual. Fong rose from a kneeling position beside Hunemiller and moved toward Burnikel while continuing to instruct Mr. Burnikel to "get back."     At approximately the same time, Ms. Hunemiller got to her feet and came between Burnikel and Fong.

Mr. Burnikel did not comply with Officer Fong's instructions. Officer Fong believed he now had probable cause to arrest Burnikel for public intoxication and interference with official acts.   Since Ms. Hunemiller was standing between Officer Fong and Mr. Burnikel, Officer Fong sprayed a short burst of mace around Hunemiller at Mr. Burnikel's face.

The officers will testify that when someone is resisting and ignoring verbal commands, the next step in the process can be the use of pepper spray with the goal of obtaining compliance. Just after Fong deployed his pepper spray, Wessels made his way over and was able to make contact with Burnikel, he and Fong then took hold of Mr. Burnikel's arms and guided him several feet

back toward the curb near the street, against a taxi van.

Wessels and Fong each had a hold of one of Burnikel's arms and told him to "give us your hands."  Burnikel resisted and tried to pull his arms away from the two officers.  The officers told Mr. Burnikel to "stop resisting," but he still resisted their efforts to take his hands behind his back for handcuffing.  As Burnikel was non-compliant, the officers increased their level of force and attempted to take Burnikel to the ground.

Fong struck Burnikel in the abdomen twice with knee strikes in an attempt to get Mr. Burnikel to the ground. Officer Wessels delivered a pair of punches across his body with this left arm in the area of Burnikel's groin.  The combination of these two events appears to have caused Burnikel's knees to buckle and he was taken to the ground.

At this point, Fong and Wessels were still trying to pull Burnikel's arms behind his back so he could be handcuffed and issued the same commands to him, "give us your hands" and "stop resisting." Mr. Burnikel continued to resist. The officers will testify that Burnikel's hands were now underneath his body and his face was down toward the direction of the ground. The officers were still commanding Burnikel to give the officers his hands, but Burnikel continued to ignore the officers' orders. Kneeling to the right of Burnikel, Fong then punched Burnikel once, striking him on the nose.

Officer Fong will testify that, due to the manner in which he and Burnikel's bodies were positioned, there appeared no other reasonable means available for Officer Fong to obtain compliance from Mr. Burnikel.   A hold upon Mr. Burnikel's wrist would be ineffective because of the position the two men were in, likewise baton strikes or taser strikes were not options as those would require Officer Fong to disengage from what control he had over Mr. Burnikel.  While Officer Fong will state that Des Moines Police Officers are trained to attempt to avoid strikes to

the face when they can, due to the situation, Officer Fong utilized it as it appeared the best option available to obtain compliance in an actively resisting individual.

At this point, the officers were able to get Burnikel's hands out from underneath his body and handcuff him without further use of force. The officers will testify they picked Burnikel up by his wrists and shoulders to his feet without incident. The parties are expected to agree the whole event took perhaps 30 seconds to a minute.

Burnikel will assert that after they handcuffed him, Officer Fong picked Burnikel up by his wrists alone, causing him to fall to his face before Wessels assisted Burnikel to his feet by taking him by his wrists and shoulders. Fong and Wessels deny either of them took Burnikel in handcuffs and lifted him only by the wrists or that he hit his face when falling – they deny any fall at all after Burnikel was handcuffed.

At no time during this process was Mr. Burnikel compliant until after he was in handcuffs. Officer Fong, through his experience on the street, believed that Mr. Burnikel (and Ms. Hunemiller) were intoxicated individuals under the influence of alcohol. Once in custody, per the legal requirements when arresting for public intoxication, Fong offered Burnikel a preliminary breathalyzer test (PBT) and Burnikel refused.

Hunemiller had wondered off while officers Fong and Wessels were engaged with the Plaintiff. She returned after Mr. Burnikel was in handcuffs, Ms. Hunemiller was then taken into custody and placed in a different section of the van.

Mr. Burnikel was charged with three offenses: Interference with Official Acts (Iowa Code §719.1), Public Intoxication (Iowa Code §123.46(2)), and Resisting Arrest (Iowa Code §804.12). All simple misdemeanors.

Ms. Hunemiller was charged and subsequently plead guilty to Public Intoxication and

9

Interference with Official Acts.

Shortly after Mr. Burnikel was handcuffed and taken to the transport van and pursuant to policy, the Crime Scene Investigator (also known as "IDENT"), Megan Wilcutt will testify she arrived and took photos of the officers and Plaintiff. Ms. Wilcutt will testify she asked Mr. Burnikel where he was injured so she could document his purported injuries. The photos taken include where Mr. Burnikel said he was injured. The Supplemental Report states:

> "I took a front facial and overall photograph of Mr. Burnikel for identification purposes. Images were taken showing his injuries including:
>
> Redness and watering to eyes
> Bleeding to nose
> Lower back (no visible injury at this time)
> Left knee (no visible injury at this time)
>
> Mr. Burnikel advised he had no further injuries from the arrest at this time."

Mr. Burnikel made no complaint regarding his teeth to Ms. Wilcutt, nor any other issue, including any complaint or concern regarding his testicles. Mr. Burnikel's eyes were flushed with water at the scene.

As Wilcutt was leaving, Lieutenant Larry Davey arrived at the scene of the incident after Mr. Burnikel was in handcuffs. Davey arrived as the supervising officer because a sergeant was involved in the use of force. Davey spoke to Officer Fong, Officer Wessels, and the Plaintiff that evening about what occurred.

Lieutenant Davey spoke with Burnikel and wrote:

> "I introduced myself and asked his name and where he lives. Mr. Burnikel said he lives in Cresco Iowa and is here for the wrestling tournament. He proceeded to tell me he saw the officers grab a female and push her to the ground for no reason. He states he didn't know the female but after seeing this, he stepped in to help her. His story changed somewhat following additional questioning. Another

> time he said he was standing back doing nothing but watching when they grabbed him and started punching him in the face. He said the officers punched him three times in the face, then sprayed him with mace. I asked if he had any other injuries and he said 'no,' only his eyes from the spray and his face where they hit him. I asked if he wanted to go to the hospital and he said 'no.'"

Both Officers Fong and Wessels documented their actions and observations regarding the arrest and use of force against Mr. Burnikel shortly after the incident.

Mr. Burnikel plead not guilty to the charges and was tried before a jury in the Polk County District Court of Iowa on May 13 and 14, 2013.   At the conclusion, a jury acquitted Burnikel on all counts.  (App. 292)  Mr. Burnikel filed suit in this matter on February 12, 2015.

Mr. Burnikel asserts a series of claims, several against the individual officers, which are the subject of the first phase of the trial.   Plaintiff asserts Officers Fong and Wessels used "excessive force" against him in violation of the Fourth Amendment and common law Battery[1]; Plaintiff asserts Officers Fong and Wessels arrested him without probable cause in violation of the Fourth Amendment and common law; and that each officer is liable for a common law malicious prosecution.   The officers deny all these claims.

B.   **Plaintiff's Asserted Damages**

Mr. Burnikel asserts that, as a result of the actions of Officers Fong and Wessels on February 16, 2013, he incurred damages.

He asserts that the incident with the officers caused physical injuries to his back, hips, ribs, thighs, groin, knees, face, eye, mouth, lip and teeth.  Mr. Burnikel has asserted he has incurred substantial chiropractic treatment bills connected to the injury, as well as therapeutic massage costs, though it appears these were done by qualified relatives and not charged to Mr.

---

[1]  Plaintiff also has alleged a common law assault claim, but Defendant believes that as the officers engaged in actual physical contact, such a claim would be subsumed within a battery claim under Iowa law.

Burnikel.  He further alleges continuing back and hip pain since this incident and that such continuing pain is related to the incident.

Mr. Burnikel further asserts dental expenses, alleging that he lost one tooth and had several other teeth chipped which will require substantial repair costs.

Mr. Burnikel also claims that he incurred additional expenses in prescription medication such as oxycodone for which he developed addiction issues due to the incident.  He further claims emotional harm and distress from the incident.  This includes an assertion that he has been restricted from coaching AAU wrestling due to a negative background report caused by the incident.

Financially, Mr. Burnikel claims that his self-employment running his business was harmed because he was not able to work as much related to pain issues caused by his encounter with Officers Fong and Wessels on February 16, 2013.

Mr. Burnikel also asserts he is entitled to punitive damages against the individual officers in regard to all individual claims.

Defendant denies liability, and therefore denies responsibility for these claimed damages. Defendants state that the Plaintiff has not and will not establish any damages as a result of his encounter with the two officers on February 16, 2013.

## ARGUMENT

**I.    PLAINTIFF'S CLAIMS AGAINST OFFICERS FONG AND WESSELS FOR EXCESSIVE FORCE ARE NOT SUPPORTED BY THE EVIDENCE**

The evidence will not support a finding that Officers Fong and Wessels's actions violated the Fourth Amendment in arresting Mr. Burnikel.   Claims of excessive force in the context of arrest or seizure are to be analyzed solely under the Fourth Amendment.  *Graham v. Connor*, 490

U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)

The actions of the officers in a Fourth Amendment claim are to be viewed from the totality of the circumstances and judged from the viewpoint of a reasonable officer irrespective of the officer's underlying intent or motivation.  See, *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2020, 188 L.Ed.2d 1056 (2014), quoting *Graham v. Connor*, 490 U.S. 386, 396-97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).   Further, events are to be "judged from the perspective of the officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

The evidence will demonstrate that the actions of Officers Fong and Wessels were reasonable from their perception at the time of the arrest.

It will be shown that Mr. Burnikel had consumed several beers by the time he arrived at the location.  Burnikel then misinterpreted an arrest by a uniformed police officer, ignored a warning from Officer Fong and ignored Officer Fong's commands.  See *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 988, 990 (8th Cir. 2015).  Burnikel then failed to follow the subsequent instructions of the officers and resisted arrest. This establishes the probable cause to arrest Mr. Burnikel and use increased levels of force. See, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)(if an officer has probable cause to suspect even minor criminal offense in their presence, they can arrest the perceived offender).

The actions of Officers Wessels and Fong were reasonable.  Reasonableness of the force depends on the facts and circumstances of each case accounting for the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  See, *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed. 443 (1989); *Devenbeck v. Alford*, 543 U.S. 146, 152 (2004); *Wilson v. Lamp,* 901 F.3d 981, 989-90 (8th Cir. 2018).  Mr.

Burnikel was perceived as being in an aggressive stance ready to fight Officer Fong.  He did not

back up as instructed by the officer, ignored clear instructions, refused to provide officers with

this hands to be handcuffed, and indeed actively resisted the officers when they attempted to take

control of his arms for handcuffing.   See, *Rokusek v. Jansen*, 899 F.3d 544, 547 (8th Cir.

2018)(necessary elements to justify take down of arrestee was whether the individual was

threatening to officer and resistant to arrest); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1007

(8thCir. 2007)(takedown okay after repeated instructions from officer ignored).

Mr. Burnikel was charged with misdemeanors: Public Intoxication, Interference with

Official Acts of Police Officers, and Resisting Arrest.  The evidence will demonstrate that, from

the perspective of Officers Fong and Wessels, Mr. Burnikel posed an immediate threat to their

safety and possibly that of others.  Further, it will be demonstrated that Mr. Burnikel was

actively resisted arrest.  Police officers are often forced to make split-second judgments in

circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is

necessary in a particular situation.  *Graham*, 490 U.S. at 397.

A.        **Unreasonable Seizure/Excessive Force Claim versus Fong**

The evidence will establish that the actions of Officer Fong toward the Plaintiff show no

Constitutional violations and he is entitled to judgment in his favor.

The relevant events begin when Officer Fong was attempting to arrest Breanna

Hunemiller, who later plead guilty to interference and public intoxication.  Dustin Burnikel

stepped in to interfere with a clearly identifiable police officer, Officer Fong, performing his job.

It will be shown that Mr. Burnikel has told widely varied versions of his location vis-à-

vis Officer Fong when this incident began [five to six feet away from Fong in May 2013, but 15

to 20 feet away by January 2016] concerning his distance from Officer Fong at the time of the

incident.  He has progressively been farther and farther away from Officer Fong the more time

has elapsed.   He has further progressed from admitting he actively intervened or "stepped in"

with the arrest of Ms. Hunemiller in some fashion to his later version that he was "just standing

there."   Mr. Burnikel will assert he was not impaired by alcohol, yet was apparently the only

person on the scene that night – including his drinking companions – who did not recognize

Fong and Wessels as fully uniformed police officers, begrudgingly admitting he may have

thought they were "security" when pressed.

Officer Fong will testify he was faced with taking control and handcuffing two

individuals within a group of possibly intoxicated people while his partner, Officer Wessels, was

trying to arrest a different individual.  For that reason, it will be shown to be reasonable and an

accepted practice to use O.C. (pepper) spray upon Burnikel when the later did not comply with

his instructions to back up or face arrest.  See, *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th

Cir. 2013)

Using O.C. spray on an individual in effectuating an arrest is not a violation of any

Constitutional right when an officer reasonably perceives a threat.  See, *Treats v. Morgan*, 308

F.3d 868, 872 (8th Cir. 2002).

Subsequently, after the application of O.C. spray, Officer Fong moved to the Plaintiff and

attempted to handcuff him.  Fong (and Wessels as described below) moved Burnikel back about

ten feet against a tax van while repeatedly ordering Mr. Burnikel to stop resisting and to give

them his hands so he could be handcuffed.  Burnikel did not comply and actively resisted.  He

has eventually testified he recalls hearing the officers tell him to "stop resisting" and to "give us

your hands."

From the perspective of the Officers, Mr. Burnikel continued to resist and not comply

with their orders.  When he was on the ground, Burnikel's hands were placed underneath his

body.  Kneeling on Burnikel's right side, Officer Fong, perceiving he had no other readily

available means to bring a resistant Mr. Burnikel under control, struck him once upon the nose,

which caused the resistance to end and allowed Mr. Burnikel to be handcuffed.

Refusal to comply with officers' orders, attempting to evade arrest, and physically

struggling against the arresting officers, are factors to consider in the amount of force used by

police.  *Wilson v. Lamp*, 901 F.3d 981, 989-90 (8th Cir. 2015); *Schoettle v. Jefferson County*, 788

F.3d 855, 859-60 (8th Cir. 2015)  Those were Mr. Burnikel's actions.  Resisting arrest in any

degree from one known to be, or one who should be known to be, a police officer is a violation

of Iowa law, even when the arrest is invalid.  Iowa Code Chapter 804.12, *U.S. v. Dawdy*, 46 F.3d

1427, 1431 (8th Cir. 1995)(resistance to arrest provides independent grounds for arrest under

Iowa Code §804.12); *State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978)("a person may not

resist arrest reasonably effected by one whom the arrestee knows or has good reason to know is a

peace officer, despite legality or illegality of the arrest."); *State v. Dawdy*, 533 N.W.2d 551, 552

(Iowa 1995)("Even though an initial arrest is unlawful, a defendant has no right to resist the

arrest. If the defendant does so, probable cause exists for a second arrest for resisting.").

The crimes alleged against Mr. Burnikel were a series of misdemeanors.  His intoxication

and interference charges were coupled with the more violent misdemeanor of resisting arrest.

See *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013)  At the time Burnikel was engaged

with Officer Fong, he was perceived, by Fong, to be coming toward him, about four feet away,

yelling, and in a stance like someone ready to fight.  From Officer Fong's perspective, Mr.

Burnikel was an immediate threat.  See, *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995)

Officers Fong and Wessels will testify that Mr. Burnikel's resistance was not a

16

"momentary refusal," but continued throughout the effort to arrest him.  His resistance ended only after the punch to the nose by Officer Fong.  See, *Schoettle v. Jefferson County*, 788 F.3d 855 (8th Cir. 2015), *Winters v. Adams*, 254 F.3d 758 (8th Cir. 2001).

When determining whether Officer Fong used excessive force in the course of an arrest, "[t]he question is whether [his] actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Brown v. City of Golden Valley*, 534 F.Supp.2d 984, citing *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001), see also *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The Fourth Amendment requires government officials to act reasonably, not perfectly, and gives those officials 'fair leeway for enforcing the law.'" *Heien v. North Carolina*, --- U.S. ---, 135 S.Ct. 530, 532, 190 L.Ed.2d 475 (2014) quoting *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

The evidence will establish Mr. Burnikel was reasonably perceived by Officer Fong as posing a threat to the safety to him or others.   See, *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009)*, Schoettle v. Jefferson County*, 788 F.3d 855 (8th Cir. 2015), *Winters v. Adams*, 254 F.3d 758 (8th Cir. 2001).   Officer Fong will testify that Mr. Burnikel did not follow a series direct statements from Officer Fong [to back up, give up his hands, stop resisting].  He then resisted arrest and continued to do so even after being taken to the ground.   With limited options, Officer Fong did deliver a blow to the Plaintiff's nose with his fist.  This ended the matter, obtained compliance, and Mr. Burnikel was handcuffed.

The evidence will establish that Officer Fong did not violate Mr. Burnikel's Fourth Amendment Right to be free of excessive force.

B.      **Unreasonable Seizure/Excessive Force Claim versus Wessels**

At the time Officer Fong first engaged with Mr. Burnikel, Officer Wessels will testify he was occupied in effectuating the arrest of another individual.  It was while Officer Wessels was trying to handcuff this individual that he looked over his right shoulder and noticed Officer Fong's attention turned towards Mr. Burnikel about ten feet away to the west.

Officer Wessels will state he could not hear what Mr. Burnikel was saying, but he could see that Burnikel had taken an aggressive posture.  From Wessels's perception, Mr. Burnikel was approximately four feet away from Officer Fong and his fists were doubled-down at this side like somebody getting ready to fight Officer Fong.

The evidence will demonstrate that this caused Officer Wessels to disengage from the person he was attempting to handcuff and go to the assistance of Officer Fong.  Because Officer Wessels was coming to the assistance of Fong, the latter's probable cause is shared by Wessels. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005); *Ehlers v. City of Rapid City,* 846 F.3d 1001, 1010(8th Cir. 2017)(assisting officer entitled to rely on probable cause of arresting officer and may receive qualified immunity as long as reliance reasonable)

It will be established that Officer Wessels arrived at Burnikel about the same time as Officer Fong, but after Fong had deployed OC Spray.  From Officer Wessels's perception, he was dealing with an individual threatening another officer.  The evidence will show this was reasonable.  See, *Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009)(objective reasonableness depends on the totality of the circumstances including whether arrestee posed a threat to the safety of officers or others).  Wessels attempted to take control of the threatening individual as promptly and reasonably as possible.  *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675,

83 L.Ed.2d 604 (1985), *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir. 2005), *Ehlers v. City of Rapid City*, 846 F.3d 1001, 1010(8th Cir. 2017)(assisting officer entitled to rely on probable cause of arresting officer as long as reliance reasonable).

Officer Wessels will testify that, like Officer Fong, he attempted to take one of Mr. Burnikel's arms under his control both while moving him back toward a taxi van by the curb to the west, but Mr. Burnikel continued to resist.  Officer Wessels will testify he repeatedly demanded that Mr. Burnikel "stop resisting" and that Burnikel give them his hands to be handcuffed.  Burnikel did not comply to these orders.  As Officer Fong delivered a pair of knee-strikes to Burnikel's abdomen, Officer Wessels delivered two blows across his body in the area of Mr. Burnikel's groin.  The combination of these efforts caused Mr. Burnikel to go to the ground.   Unfortunately, it did not result in immediate compliance as Mr. Burnikel continued to resist.   Eventually, Officer Fong's blow to Mr. Burnikel's nose led to the latter being handcuffed.

Like Officer Fong, Officer Wessels's application of force is to be evaluated "from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  This calculus allows "for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  *Partlow v. Stadler*, 774 F.3d 497, 502 (8th Cir. 2014) quoting *Graham v. Connor*, 490 U.S. at 397.

There is no decision that has found a punch to the groin an excessive use of force against a *resistant*, *non-compliant*, individual *reasonably perceived to be a threat* and *not yet under control* of the officers.  *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); see generally *White v. Pauley*, 137 S.Ct. 548, 550 (2017)( "clearly established law"

should not be defined "at a high level of generality... the clearly established law must be "particularized" to the facts of the case).

The Plaintiff may attempt to use the incident that occurred on February 16, 2013 as part of a pattern of conduct by either Officer Fong or Officer Wessels as police officers [Plaintiff's Exhibits 27-35, 50].   Such assertions for claims against individual officers sued for excessive force are improper.   When determining whether a police officer used excessive force in the course of an arrest, "[t]he question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, *without regard to their underlying intent or motivation." Brown v. City of Golden Valley*, 534 F.Supp.2d 984 (emphasis added), citing *Winters v. Adams*, 254 F.3d 758, 765 (8th Cir. 2001), see also *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

To be admissible in a Fourth Amendment claim the other acts must be "similar in kind and close in time to the [event at issue]." See, *Baptiste-Davis v. Lincare, Inc*., 526 F.3d 377, 380 (8th Cir. 2008).   Furthermore, other uses of force by the officers occurred in different factual contexts, an issue that the Supreme Court has repeatedly emphasized must be heeded in the context of specific cases. "We have repeatedly told courts ... not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam* ) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that "[i]t is sometimes difficult

20

for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." 533 U.S., at 205, 121 S.Ct. 2151.  The factual situation confronted by the officers here, is not identical to that used in other situations and should not be admitted under FRE 401 and 403.

In addition, to be admissible for other purposes evidence of other crimes, wrongs, or acts must also be "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than prejudicial effect; and (4) similar-in-kind and close in time to the event at issue". *Baptiste*, 526 F.3d at 380, quoting *Barry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998), accord *United States v. Aranda*, 963 F.2d 211, 215 (8th Cir. 1992), *United States v. Campbell*, 937 F.2d 404, 406 (8th Cir. 1991).  None of these requirements are met in this matter.

As of February 26, 2013, Officer Wessels had two reprimands related to the use of force, both involving individuals who were handcuffed.  Neither of the incidents in 2008 or 2009 were proximately close in time; they are not similar-in-kind to a use of force against a resistant arrestee who was not in handcuffs.  Their probative value is low as they are not relevant to a material issue, while their prejudicial effect in being presented to the jury would be high. Likewise, the post-events involving the discharge of a firearm against the tire of a fleeing criminal suspect was a violation of City policy, not a violation of the Fourth Amendment, it was also, of course, nothing like the situation in this matter.  Likewise, the 2013 reprimand dealt with the failure to document a use of force involving again a handcuffed suspect, while in this matter the assertion is an explicit use of force.  Further, in this matter Officer Wessels documented his use of force, the two punches to the groin.  This is especially true given the Supreme Court's off-repeated admonishment that court's view uses of force, especially those which are policy-based, with a high degree of particularity in claims involving the Fourth Amendment. See, *White v.*

*Pauley*, 137 S.Ct. 548, 550 (2017)( "clearly established law" should not be defined "at a high

level of generality... the clearly established law must be "particularized" to the facts of the case.);

see also *Mullinex v. Luna*, 136 S.Ct. 305, 308 (2015) *Ashcroft v. al–Kidd,* 563 U.S. 731, 742, 131

S.Ct. 2074, 179 L.Ed.2d 1149 (2011); *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct.

3034, 97 L.Ed.2d 523 (1987).

The evidence will demonstrate Officers Wessels and Fong's use of force against Burnikel

did not constitute excessive force, nor did the use of force constitute clearly established

excessive force at the time of incident.

The evidence will demonstrate that Mr. Burnikel failed to demonstrate his claim of

excessive force against Officers Fong and Wessels in both their official and individual capacities

and judgment should be for the officers.

### C.      The Plaintiff's claim of injury after handcuffing

The plaintiff is expected to assert that the manner in which the Officers handled him once

compliant, more particularly one of the officers, caused him to be injured.   Mr. Burnikel is

expected to assert that at least one of the officers picked him up while handcuffed

inappropriately, causing him to injure his shoulders, as well as to fall face-first into the concrete

causing damage to his teeth.

The Defendants will testify that this did not occur.

The Plaintiff claimed that after he was handcuffed the only remaining physical injury that

occurred is when he was "…face first in the concrete.  They [the officers] lifted me up with my

shoulders—with my hands that were in cuffs right up over the top of my head and I face planted

right into the cement."   Specifically, he claims that "one officer did it intentionally because he

was mad at me…and I went down, he let me go down.  The other guy actually picked me up and

helped me."

Both officers will deny this occurred.  The video that the Plaintiff intends to introduce into evidence shows Mr. Burnikel on the ground between the curb and the street at the time in which he is handcuffed.   At no point in the video does it depict either officer dropping the plaintiff on his face.  At no point does it reflect the officers dropping the Plaintiff, at no point does the Plaintiff hit his face on the ground.  Rather, it demonstrates that initially the Plaintiff was not compliant in getting to his feet.  The officers stopped at this point and helped the plaintiff to his feet.   His hands never come over his head.  At the end of the video, the Plaintiff can be seen walking with the officers in the direction away from the street, almost certainly toward the awaiting holding van.  There is simply no supportive evidence the Plaintiff was injured post-handcuffing.

## II.    PLAINTIFF'S CLAIMS AGAINST OFFICERS FONG AND WESSELS FOR BATTERY ARE NOT SUPPORTED BY EVIDENCE

Mr. Burnikel also asserts a common law claim under against Officers Fong and Wessels for battery.  However, the evidence will stablish that the Officers should also prevail upon a claim under Iowa Code § 804.8:

> *A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest.*

As described in regard to the allegation of the "use of force" on the battery claim, the evidence will show Officer Fong and then Officer Wessels reasonably perceived Mr. Burnikel posed a physical threat and the use of force was necessary to make the arrest.  From the perspective of Officers Fong and Wessels, Mr. Burnikel was approaching Officer Fong aggressively and interfering with a valid arrest of another.  The fact that the Plaintiff cannot

prevail under an 'excessive force' claim should establish he cannot succeed under a state law claim for battery which has a similar standard.

The evidence in this case demonstrates that, at the time they acted, Officers Fong and Wessels exercised due care in regard to the Plaintiff, they reasonably used force upon a resistant subject, and this claim should be resolved in their favor.

### III.   PLAINTIFF'S CLAIMS OF FALSE ARREST AGAINST OFFICERS FONG AND WESSELS ARE NOT SUPPORED BY THE EVIDENCE

Plaintiff alleges Officers Fong and Wessels made an unconstitutional and common law false arrest.

A false arrest claim under §1983 fails as a matter of law "where the officer had probable cause to make the arrest."  See, *Anderson v. Franklin County*, 192 F.3d 1125, 1131 (8th Cir. 1999).

A police officer who has probable cause to believe a suspect has committed a crime is not liable for a claim of false arrest simply because the person charged is subsequently acquitted. *Hannah v. City of Overland*, 795 F.3d 1385, 1389 (8th Cir. 1986).

Mr. Burnikel was charged with three offenses: Interference with Official Acts (Iowa Code §719.1), Public Intoxication (Iowa Code §123.46(2)), and Resisting Arrest (Iowa Code §804.12). All simple misdemeanors.

Though, as the arrest report demonstrates, other criminal issues were involved in the charges against Mr. Burnikel and a reasonable belief he was publicly intoxicated existed. An officer may seize an apparently intoxicated individual to ensure public or the individual's safety. *Winters v. Adams*, 254 F.3d 758, 763 (8th Cir. 2001); *United States v. Harris*, 747 F.3d 1013, 1017 (8th Cir. 2014).  The evidence, as discussed at length above, demonstrates that the officers had ample probable cause to arrest Mr. Burnikel for his actions in interfering with an arrest and

24

for his accompanying intoxicated state.

When a "constitutional" false arrest claim is asserted against an arresting officer, the key question is whether there was "probable cause" for the arrest of the plaintiff, measured by examining the law that the plaintiff purportedly violated. See, *Kurtz v. City of Shrewbury*, 245 F.3d 753 (8th Cir. 2001)   Moreover, the "probable cause" requirement in *Kurtz* is what gives constitutional proportions to what otherwise might be only a State law tort, for it is the presence or absence of "probable cause" that determines whether the plaintiff's C*onstitutional* rights have been violated. *See, e.g., Quezada v. County of Bernalillo,* 944 F.2d 710, 714 (10th Cir.1991)

The evidence will show Officers Fong and Wessels had a reasonable basis for believing they had probable cause to arrest Mr. Burnikel for interfering with the performance of their duties in arresting two different individuals.  Burnikel then physically resisted their attempts to arrest him, requiring increased levels of physical coercion.   For this reason, a verdict in the Defendants' favor should be entered on this claim.

## IV.    PLAINTIFF'S CLAIMS OF MALICIOUS PROSECUTION AGAINST FONG AND WESSELS ARE NOT SUPPORTED BY THE EVIDENCE

The Plaintiff finally alleges that Officers Fong and Wessels engaged in a common law malicious prosecution against him.

To succeed with this claim under Iowa law, Mr. Burnikel must prove all of the following: (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of the defendant for bringing the prosecution, and (6) damage to the plaintiff. *Whalen v. Connelly,* 621 N.W.2d 681, 687–88 (Iowa 2000) (*en banc*).

The mere fact Mr. Burnikel was acquitted in his criminal trial affords no evidence that Mr. Burnikel's arrest was without probable cause.  Acquittal only implies that the evidence did

not meet the heavy standard necessary for a criminal conviction.  See, *Yoch v. City of Cedar Rapids*, 353 N.W.2d 95, 101 (Iowa 1994).

The evidence will establish Officers Fong and Wessels had reasonable basis for believing they had probable cause to arrest Mr. Burnikel for interfering with the performance of their duties in making arrests, that Burnikel physically resisted their attempts to arrest him, and that his appearance and mannerisms reflected one who was operating under the influence of alcohol. The matter was then turned over to others for prosecution.

For all the reasons above, a judgment should be entered in favor of Officers Fong and Wessels with regard to this issue.

## V.      PLAINTIFF'S DAMAGES CLAIMS ARE NOT SUPPORTED BY THE EVIDENCE.

The Defendants do not believe the evidence supports a finding of liability against any of the Defendants on any of Mr. Burnikel's claims.  Further, even were a claim available, they do not believe Mr. Burnikel is entitled to compensation.

First, as to his medical damages, Mr. Burnikel will not be able to establish any medical expert testimony regarding any consequence that goes beyond immediate medical treatment, all such claims are speculative as to causation as well as generally the extent of the injury.  The Plaintiff will fail to establish that his claimed damages were proximately caused by the Defendants.

Second, the evidence will establish that most, if not all, of Mr. Burnikel's claimed damages are actually pre-existing conditions noted in the medical information he has produced in discovery.  This includes a pre-existing admission of being dependent upon oxycodone prior to February 16, 2013.

Third, many of the medical or dental injuries Mr. Burnikel claims are not supported as

26

related to his encounter with the police officers.  See, *Crumley v. City of St. Paul*, 324 F.3d 1003,

1008 (absence of medical records indicating any long-term injury related to force used); see also

*Foster v. Metropolitan Airports Commission*, 914 F.2d 1076, 1082 (8th Cir. 1990)(allegations of

pain without some evidence of a more permanent injury required).

Fourth, the economic damages asserted by Mr. Burnikel are speculative at best and not

supported by any evidence in the record other than conjecture.  The same is true as to some of

the medical expenses that Mr. Burnikel claims to have incurred.

Fifth, among the damages Mr. Burnikel alleges is a denial of a coaching certificate for

AAU wrestling.  The evidence will establish that Mr. Burnikel's assertion is belied by the actual

background report he has cited for support.  The background report indicates he was denied his

coaching certification due to a variety of reasons including an OWI unrelated to this matter.

Nowhere in the in the background report is his February 16, 2013 arrest mentioned.

Sixth, the requisite level for punitive damages will not be shown upon any claim.

There will be no evidence, no matter the standard of proof [whether of persuasion or clear and

convincing] presented upon the Federal claims that demonstrates malice or reckless

indifference on the part of either officer.   In regard to the common law claims, Plaintiff will

be unable to present clear and convincing evidence of willful and wanton disregard for the

rights or safety of another that caused actual damage to the Plaintiff.

Such evidence will undermine the credibility of Mr. Burnikel and his alleged damages.

## CONCLUSION

WHEREFORE, Defendants City of Des Moines and Officers Fong and Wessels assert

that the evidence will support a verdict in their favor on all counts asserted by Plaintiff, that costs

should be awarded against the Plaintiff, and for such other relief as may be justified under the

circumstances.

Further, the Defendants request that, if any of the claims of the Plaintiff are submitted to the jury in this matter, the Court instruct the Jury in the manner proposed by Defendants in the separately-filed, Proposed Jury Instructions and Special Verdict Form.

Respectfully submitted,

_____*/s/John O. Haraldson*_____
John O. Haraldson  AT0003231
Assistant City Attorney
City Hall, 400 Robert D. Ray Dr.
Des Moines, IA  50309-1891
Telephone:  (515) 283-4547
Facsimile:  (515) 237-1748
E-mail:  joharaldson@dmgov.org

ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on, October 24, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and a true copy of the foregoing was electronically sent via the Clerk of Court.

_____*/s/ John O. Haraldson*_____
John O. Haraldson
Assistant City Attorney

28